IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |  |
|---|---|---|
| CARL HARRIS, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 1:21CV553-ECM |
| | ) | (wo) |
| THE CITY OF OZARK, ALABAMA, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court is a motion to dismiss filed by Defendants the City of Ozark, Marlos Walker, and Jimmy Culbreath. (Doc. 35).

The Plaintiff, Carl Harris ("Harris"), filed a complaint in this case, which was dismissed by order of this Court in a ruling on a previous motion to dismiss. Harris was given leave to file a new amended complaint bringing claims of malicious prosecution against the City of Ozark ("the City"), Marlos Walker ("Walker"), and Jimmy Culbreath ("Culbreath") (collectively "Defendants"). (Doc. 26).

Harris filed an amended complaint which brings a claim for violation of the Fourteenth Amendment (count one) and a claim for violation of the Fourth Amendment (count two). Attached to the amended complaint are four exhibits from the state court criminal case against Harris. The Defendants have moved to dismiss Harris' claims and have attached thirty-three exhibits to their motion.

Upon consideration of the motion, attachments,[1] briefs, record, and applicable law, and for reasons to be discussed, the motion to dismiss is due to be GRANTED.

## I. MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 663 (alteration in original) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555, 570. This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-

---

[1] The attachments include those provided by Harris and by the Defendants. The authenticity of the Defendants' exhibits has not been challenged and Harris does not argue they should not be considered; therefore, the Court has considered them in ruling on the motion to dismiss. *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010).

2

me accusation." *Id.* at 678. Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

### III. FACTS

The facts alleged in the amended complaint and incorporated documents are as follows:

In 1990, Tracey Harris, the ex-wife of Plaintiff Harris, was found deceased in Hale County, Alabama. Harris was investigated in the death of his ex-wife. The amended complaint alleges that the Ozark Police Department found no blood or DNA evidence to tie Harris to the crime, there were no police reports or hospital records of abuse of Tracey Harris, that witnesses living in the house of Tracey Harris and Harris were not interviewed, and that there were no marks on Harris' body. (Doc. 29 para. 5). No prosecution resulted from the initial investigation.

In 2016, the cold case was reopened by City police officer Culbreath. Walker was the Chief of Police at that time and the supervisor of Culbreath.

The amended complaint alleges that on September 9, 2016, Culbreath provided false information and executed a sworn deposition in which he "provided false information to 'paint a picture' where no one else but your Plaintiff could have killed Tracey Harris." (*Id.* para. 7). Harris has attached Culbreath's deposition. (Doc. 29-1). The amended complaint identifies statements by Culbreath within that deposition as being false, including that Harris had a long extensive history of physically abusing and beating to the point of unconsciousness his wife; that Harris gave inconsistent statements about his whereabouts

3

and actions on March 7, 1990; that Harris told friends and family that Tracey Harris was not coming back; that Harris made statements to numerous people implicating himself; and, finally, based on Harris' statements of admission to several witnesses, his history of violence, Harris being the last person to see Tracey Harris alive, his history of excessive physical abuse and violence toward Tracey Harris, it was believed that Harris choked Tracey Harris to a point of unconsciousness and discarded her seemingly lifeless body into the Choctawhatchee River where she ultimately drowned. (Doc. 29 paras. 8-10). The second amended complaint alleges with regard to each of these statements that Culbreath "provided no further corroboration of his statement, which was based on hearsay." (*Id.*).

On September 13, 2016, Harris was arrested for the murder of Tracey Harris pursuant to the warrant based on information provided by Culbreath. (*Id.* para. 11). On March 14, 2018, Harris was indicted for the crime. Just before the trial date of January 13, 2020, Dawn Beasley came forward with the name of Jeff Beasley as the person who had killed Tracey Harris. (*Id.* para. 13). Jeff Beasley subsequently confessed to the murder of Tracey Harris. (*Id.*).

The case against Harris was dismissed on January 13, 2020 upon motion of the prosecution.

In response to Harris' identification in the amended complaint of statements he characterizes as being based on hearsay, the Defendants have attached to their motion multiple witness statements and interviews from both 1990 and 2016. For example, they attach a 1998 interview of Bobby Herring in which he said that he had seen Harris punch

Tracey Harris and knock her unconscious for ten or fifteen minutes at a time. (Doc. 36-7 at 28). Bobby Herring further said that Harris said that Tracey Harris had $50,000.00 in insurance and they could throw her in the river and take the money. (Doc. 36-6 at 26). In a 2016 interview, interviewee Lisa Herring said that Harris was always knocking Tracey Harris out. (Doc. 36-19 at 23:09). In another attachment to the motion, Betty Jo Herring said in a statement that after her disappearance Harris said, "Tracey won't be back." (Doc. 36-2 at 2).

### III.   DISCUSSION

Harris' amended complaint brings claims pursuant to the Fourteenth Amendment in count one and the Fourth Amendment in count two. The Defendants move to dismiss count one arguing that because the amended complaint alleges that Harris was arrested pursuant to a warrant, the Fourth Amendment governs. Harris responds that the Fourteenth Amendment contains a procedural and a substantive due process guarantee. (Doc. 41 at 6). The Supreme Court, however, has foreclosed a substantive due process claim based on prosecution without probable cause, holding that the Fourth Amendment governs such claims. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994). To prevail on a federal malicious prosecution claim, a plaintiff must show (1) the elements of the common law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. *Paez v. Mulvey,* 915 F.3d 1276, 1285 (11th Cir. 2019). The motion to dismiss as to count one is, therefore, due to be GRANTED. The Court now turns to the Fourth Amendment claims.

A. Fourth Amendment Claim Against the City

The Defendants move for dismissal of the Fourth Amendment claim against the City, arguing that the allegation of the amended complaint that Culbreath and Walker acted within the scope of their employment is insufficient to establish municipal liability. They contend that the amended complaint fails to allege a municipal policy or custom that caused a constitutional deprivation.

Harris argues in response that in *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court acknowledged that inadequacy of training can serve as a basis for liability. Harris contends that the allegations of the amended complaint show that Culbreath acted with neglect, carelessness, or unskillfulness which is sufficient to impose municipal liability, citing to Alabama state law. (Doc. 41 at 5).

Mere negligence is not sufficient to impose municipal liability under federal law. *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 407 (1997). Instead, a plaintiff must show deliberate indifference. *Id.* To show deliberate indifference with respect to police training, generally a plaintiff must allege a pattern of similar constitutional violations that would put the municipality on notice of its inadequate training. *See Connick v. Thompson*, 563 U.S. 51, 70 (2011). Harris does not allege any facts of a pattern of similar constitutional violations. Therefore, there is no plausible claim of municipal liability and the federal claim against the City is due to be dismissed.

B.  Fourth Amendment Claim Against the Individual Defendants

Culbreath and Walker invoke the defense of qualified immunity.  Harris argues that qualified immunity should not be evaluated before discovery, citing to decisions of the Alabama Supreme Court.  Federal qualified immunity, however, is an entitlement not to face the burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 525–26 (1985).  It balances the need to hold the government accountable with the need to protect officers from the distractions of litigation. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

Qualified immunity protects government officials from suit if they are "performing discretionary functions" and "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

As to the discretionary function inquiry, Harris argues that because Culbreath and Walker violated his constitutional rights, they were not engaged in discretionary functions. The inquiry is not, however, whether the act was illegal, but whether the injury was related to duties of the defendant. *See Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998).  Because the complaint alleges that the actions taken were in the context of Culbreath providing information for an arrest warrant, the discretionary function prong is met. *See Byrd v. Jones*, 2015 WL 2194697, at *9 (N.D. Ala. 2015) (finding "the court does not ask whether the defendant had the right to illegally arrest the plaintiff, or swear out an illegal warrant, but simply whether making arrests and swearing out warrants was within

7

the general scope of the officer's duties"), *aff'd*, 673 F. App'x 968 (11th Cir. 2016). This Court, therefore, turns to the issue of whether the amended complaint has sufficiently alleged a violation of a clearly established constitutional right.

Courts evaluating qualified immunity engage in a two-pronged inquiry. The first asks whether the facts, "[t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right [.]" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The second prong of the qualified-immunity analysis asks whether the right in question was "clearly established" at the time of the violation. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "[T]he salient question ... is whether the state of the law" at the time of an incident provided "fair warning" to the defendants "that their alleged [conduct] was unconstitutional." *Id.* at 741.

    *1. Walker*

The claim pleaded against Walker is based on an allegation that Culbreath was supervised by Walker and that they were acting within the scope of their employment. (Doc. 29 para. 18). The Defendants argue that because the complaint alleges only that Walker supervised Culbreath, the complaint fails to state a claim of supervisory liability.

Harris states in his brief that supervisory liability may be imposed when there is gross negligence or deliberate indifference, citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2nd Cir. 1986). (Doc. 41 at 5). Deliberate indifference, however, and not gross negligence, is the governing standard. *See Board of Cnty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 407 (1997)("A showing of simple or even heightened negligence will not

suffice."). Supervisory officials can be held liable under § 1983 actions for constitutional violations on two grounds: "(1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation." *Gray v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006). A causal connection can be established in one of two ways: "(1) when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he or she fails to do so or (2) when a supervisor's improper custom or policy results in deliberate indifference to constitutional rights." *Doe v. School Bd. of Broward Cty. Fla.*, 604 F.3d 1248, 1266 (11th Cir. 2010).

Despite having been given an opportunity to replead his claim, Harris' second amended complaint does not allege sufficient facts to support an inference of deliberate indifference. The second amended complaint merely alleges that Culbreath acted under the supervision of Walker. (Doc. 29 paras. 15 & 18). Therefore, the motion to dismiss is due to be GRANTED as to the claim against Walker.

### 2. *Culbreath*

A plaintiff asserting a federal malicious prosecution claim must prove that the defendant violated his Fourth Amendment right to be free from unreasonable seizures pursuant to legal process and that the criminal proceedings against him terminated in his favor. *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020). To establish that a defendant violated a Fourth Amendment right to be free from seizures pursuant to legal process, a plaintiff must establish "that the legal process justifying his seizure was constitutionally

9

infirm" and "that his seizure would not otherwise be justified without legal process." *Id.* A plaintiff can prove that his arrest warrant was constitutionally infirm if the officer who applied for the warrant should have known that his application failed to establish probable cause, "or that an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant." *Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020).

The Defendants concede that the amended complaint plausibly alleges that the criminal proceedings against Harris terminated in his favor and that he was seized. (Doc. 36 at 33).  The Defendants argue, however, that Culbreath is entitled to qualified immunity both because the amended complaint does not plausibly allege that Culbreath committed perjury and because Culbreath's deposition established arguable probable cause for Harris' arrest even without the statements Harris has identified as false.

Upon review of the original complaint, the Court identified pleading deficiencies and gave Harris an opportunity to replead his claim to provide factual content to support the conclusory allegation that Culbreath made false statements or to support a theory that a reasonable officer would not have applied for the warrant. (Doc. 26 at 10).  To some extent, those pleading deficiencies still exist.  For example, the amended complaint contains an allegation that Culbreath provided false information; however, an allegation that Culbreath provided false information is conclusory and not sufficient to state a plausible claim. *See Carter v. Gore*, 557 F. App'x 904, 908 (11th Cir. 2014).

10

Harris, however, also has provided additional factual content in the amended complaint. He alleges that specific statements within the deposition Culbreath provided in seeking a warrant were false, attaching Culbreath's deposition as an exhibit. (Doc. 29 & 29-1). The specific statements identified in the amended complaint as being allegedly false are that Harris had a long, extensive history of physically abusing and beating to the point of unconsciousness his wife; that Harris gave inconsistent statements about his whereabouts and actions on March 7, 1990; that Harris told friends and family that Tracey Harris was not coming back; that Harris made statements to numerous people implicating himself; and that it was believed that Harris choked Tracey Harris to a point of unconsciousness and discarded her seemingly lifeless body into the Choctawhatchee River. (*Id.* paras. 8-10). Harris pleads in the amended complaint that these statements were false because Culbreath provided no further corroboration of each of these statements, which were based on hearsay. (Doc. 29 para. 8-10). Harris also alleges that Culbreath knew the "information provided was false, was at best based on hearsay . . . ." (*Id.* para. 20).

The Defendants argue that although the amended complaint alleges that Culbreath's statements were false because they were based only on hearsay, a warrant can be based on hearsay. They also point to witnesses' statements as supporting Culbreath's deposition including a 1998 interview of Bobby Herring in which he said that he had seen Harris punch Tracey Harris and knock her unconscious for ten or fifteen minutes at a time (doc. 36-7 at 28); a statement in which Bobby Herring said that Harris said that Tracey Harris had $50,000.00 in insurance and they could throw her in the river and take the money (doc.

11

36-6 at 26); a 2016 interview of Lisa Herring during which she said that Harris was always knocking Tracey Harris out (doc. 36-19 at 23:09); and a statement by Betty Jo Herring in which she said that after Tracey Harris' disappearance Harris said, "Tracey won't be back." (Doc. 36-2 at 2).

Harris' response in his brief is that Culbreath's testimony was fabricated because he had no non-hearsay evidence, including no police incident reports, to support his conclusion. (Doc. 41 at 3). In response to the witness statements, Harris does not point to allegations that dispute any aspect of what the witnesses said, but merely argues that they in no way change that Culbreath falsely said that Harris choked Tracey Harris and discarded her body in the river where she drowned. (Doc. 41 at 2).[2]

To the extent that Culbreath's statements in the deposition relied on hearsay, that reliance was not improper for it long has been the law that "[w]hile a warrant may issue only upon a finding of 'probable cause,'" "a finding of 'probable cause' may rest upon evidence which is not legally competent in a criminal trial." *United States v. Ventresca*, 380 U.S. 102, 107–08 (1965). Therefore, hearsay may be the basis for issuance of the warrant. *Id.* The information must be "'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Kelly v. Curtis,* 21 F.3d 1544,

---

[2] The sentence in the deposition is an expression of Culbreath's conclusion:
> Based off of Carl Harris statements of admission to several of these witnesses, his history of violence, him being the last person to see Tracey Harris alive, his history of excess physical abuse and violence toward Tracey Harris, it is believed that Carl Harris choked Tracey to a point of unconsciousness and then discarded her seemingly lifeless body into the Choctawhatchee River where she ultimately drowned.

(Doc. 29-1).

12

1554–55 (11th Cir. 1994)(quoting *Franks v. Delaware,* 438 U.S. 154, 165–66 (1978)). The Eleventh Circuit also has concluded that the difference between negligent and reckless disregard for the truth is not clear. *Id.* at 1554. Therefore, an officer loses qualified immunity only "if the plaintiff can prove that the officer perjured himself—that is, put forth information he did not believe or accept as true—in order to obtain" a warrant. *Carter*, 557 F. App'x at 908.

Harris has had ample opportunities to plead the basis of his claim against Culbreath. His theory that Culbreath lied in seeking a warrant merely because he relied on hearsay does not state a plausible claim of a clearly established constitutional violation. *See Kelly,* 21 F.3d at 1554. Furthermore, there are insufficient non-conclusory allegations of fact to show that Culbreath did not believe or accept as true the statements which are included in the deposition. And, considering the incorporated witness interviews, the conclusory allegation that Culbreath knew the information he relied on to be false does not state a plausible claim because the witness statements are consistent with Culbreath's statements within the deposition and thereby contradict the conclusory allegation. *See Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007)(explaining that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."). Accordingly, the motion to dismiss the claim against Culbreath also is due to be GRANTED.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED that the motion to dismiss filed by Defendants the City of Ozark, Marlos Walker, and Jimmy Culbreath (doc. 35) is GRANTED.

A separate Final Judgment will be entered.

DONE this 27th Day of May, 2022.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE